IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| CAITLYN AMANDA WALL, | No. 60103-6-II |
| Respondent, | |
| v. | |
| LARRY HILL WALL, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Larry Wall[1] appeals the superior court's order denying revision of the entry

of a civil protection order and the superior court's order denying reconsideration. Larry is the

restrained party in the civil protection order, and Caitlyn Wall is the protected party.

The protection order was entered by a superior court commissioner, and Larry filed a

motion to vacate the order, which was denied. Larry then moved to revise the commissioner's

order (which had denied his motion to vacate). His motion to revise was untimely, so it was denied.

Larry sought reconsideration of the denial of his motion to revise, and the motion to reconsider

was denied.

---

[1] Because the parties share the same last name, we refer to them by their first names. No disrespect
is intended.

Larry appeals the order denying his motion for revision and the order denying his motion for reconsideration.[2] Due to his failure to timely appeal several of the above orders, based on our commissioner's order regarding appealability (which is set out below), we address only the last of them: the superior court's order denying his motion to reconsider. We affirm the superior court's order denying his motion to reconsider because Larry did not timely file his motion for revision. As such, the superior court's denial of reconsideration was not an abuse of discretion.

FACTS

I.    BACKGROUND AND PROTECTION ORDER

Larry, who resides in Florida, and Caitlyn, who resides in Washington, are father and daughter. Caitlyn ceased contact with Larry and stated she had not seen him since 2018. In 2020, Larry began messaging and e-mailing Caitlyn despite her repeated requests to stop. In 2022, Larry continued sending e-mails.

On March 7, 2022, Caitlyn e-mailed Larry stating:

> Do not contact me again. Do not come anywhere near me. Do not attempt to contact my husband, either.
> I have told you to stop before, and I will not tell you again.
> Consider this a formal warning[,] that if you continue to contact me, I will make a report against you.

Clerk's Papers (CP) at 35.

Despite this, later that day, Larry responded twice to Caitlyn's e-mail. He also e-mailed Caitlyn on March 10, 11, 13, and 14. On March 14, Caitlyn reported Larry to the police for harassment. Larry continued e-mailing Caitlyn on March 29, April 24, 28, 29, May 5, November

---

[2] Larry also purports to appeal the civil protection order, but his appeal of that order is not timely so we do not consider it. Even if we did consider it, Larry argues only that the superior court did not have personal jurisdiction over him, in part due to insufficient service, and we reject that argument because Larry waived the defenses of lack of personal jurisdiction and insufficient service.

24, and December 24. In 2023, Larry e-mailed Caitlyn to tell her that he would be visiting near Caitlyn's residence.

On February 12, 2024, Caitlyn petitioned for a civil protection order. That same day, the commissioner entered a temporary domestic violence and anti-harassment protection order restraining Larry.

On February 20 at 4:08 p.m., Caitlyn's attorney e-mailed Larry and included a copy of the petition and the temporary protection order. The next day, Caitlyn's attorney e-mailed Larry the information regarding how to attend the hearing on the petition.

On February 22, at the hearing on the petition, Larry attended remotely via Zoom. At the beginning of the proceedings, the trial court asked Larry if he was "prepared to move forward," and he responded: "It was difficult to prepare for this with such short notice, *but I think we should move forward*." Rep. of Proc. (RP) at 4 (emphasis added).

The trial court described to Larry how the hearing would proceed, stating:

> [W]e'll be having a full hearing this morning, and the structure of the hearing is that [Caitlyn's counsel] will have 10—you'll each have 10 minutes. [Caitlyn's counsel] gets to make her case for her client, and then you'll have your opportunity to respond, and then [Caitlyn's counsel] will have the last word, and then I'll make a decision on whether the order should be issued, all right?

RP at 4. Larry responded, "[y]es ma'am. I agree." RP at 5.

Larry proceeded to present testimony regarding why he thought the petition was unfounded stating in part:

> I respectfully request the Court to dismiss this. . . . Caitlyn has not seen me in six years. Not once. She was two miles away, three miles away, several hundred miles away in South Carolina, and now she's several thousand miles away. There's no way that she is scared of me. I guess that's all I've got to say, Your Honor.
>       . . . .
> I have no intention of going to Washington at all to try to create any distress at all on my daughter. I haven't done it yet. I wouldn't do it now. And by the way, Caitlyn also knows, because it's part of the order and I understand it's domestic

violence, I have never allowed a weapon in this house, other than the steak knives in the kitchen, if you want to call them a weapon.

RP at 10-11.

The court then asked Larry when he was served, and the following exchange took place:

> [LARRY]: I saw [the petition] about 36 hours ago, a day and a half ago. That was evening time.
> THE COURT: And you received them from the sheriff?
> [CAITLYN'S COUNSEL]: No, Your Honor, I emailed them to him.
> THE COURT: You emailed—
> [LARRY]: No, from the attorney.
> THE COURT: —them?
> [LARRY]: I would have expected to be served or see something.
> THE COURT: Okay.
> [LARRY]: I didn't know—
> THE COURT: You'll be filing a proof of service, then?
> [CAITLYN'S COUNSEL]: Yes, Your Honor.
> THE COURT: All right.
> [CAITLYN'S COUNSEL]: I have the email correspondence if you want me to present it to the Court.
> THE COURT: Well, I need to have a return of service filed, and so— [Larry], so [Caitlyn's counsel] gets the last word. Are you done?
> [LARRY]: Oh, okay. Yeah—

RP at 11-12. That same day, Caitlyn's counsel filed a proof of service, and the trial court granted the protection order.

## II.    SUBSEQUENT PROCEDURAL HISTORY

On June 13, Larry filed a motion to vacate the protection order in which he argued, in part, lack of personal jurisdiction and insufficient service. On June 20, the superior court commissioner denied the motion to vacate, finding that "[Larry] made no objections at said hearing on any basis, jurisdictional or otherwise, and never requested a continuance, but instead when asked whether he was ready to move forward he informed the court he was and did then participate meaningfully in the hearing providing argument." CP at 248.

4

On July 1, at 4:32 p.m., Larry e-mailed the Kitsap County clerk's office requesting to file a motion for revision of the commissioner's decision denying his motion to vacate. According to the time stamp on Larry's motion for revision, it was filed on July 2. On July 19, the trial court denied the motion for revision as untimely pursuant to RCW 2.24.050, which requires a motion for revision to be filed "within ten days after the entry of any order or judgment of the court commissioner." On July 29, Larry filed a motion to reconsider the order denying the motion for revision as untimely filed. Then, on August 5, the court denied his motion for reconsideration because the motion for revision was untimely filed.

On August 23, Larry filed a notice of appeal challenging the trial court's June 20 order denying his motion to vacate the February 22 order granting the protection order as well as the trial court's July 19 and August 5 orders denying both his motion for revision and motion for reconsideration, respectively.

Additional facts relevant to the analysis are included below.

## ANALYSIS

I.     APPEALABILITY

*"*A necessary prerequisite to appellate jurisdiction is the timely filing of the notice of appeal.*"* *Brower v. Pierce County*, 96 Wn. App. 559, 562, 984 P.2d 1036 (1999). Larry failed to timely appeal several of the orders he now complains of on appeal. He filed his notice of appeal with the superior court on August 23. The motions and orders at issue in Larry's briefing are as follows:

- February 22 protection order

- June 13 motion to vacate February 22 protection order.

- June 20 order denying his June 13 motion to vacate

5

- Untimely July 2 motion to revise June 20 order

- July 19 order denying untimely July 2 motion to revise

- July 29 motion to reconsider July 19 denial

- August 5 order denying July 29 motion to reconsider July 19 denial (of July 2 motion to revise June 20 order)

Upon filing his notice of appeal, our commissioner issued a ruling on appealability. That ruling, from October 8, 2024, states in part:

> This court set this matter for appealability. Upon review of the documents appended to the August 23, 2024 notice of appeal, and the parties' responses to the appealability letter, this court determines that [Larry's] appeal of the June 20, 2024 denial of his motion to vacate is untimely. A timely motion to revise or for reconsideration may extend the time to appeal the underlying order, but an untimely motion does not. *Shafaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 36, 367-68, 849 P.2d 1225 (1993); *see also Sullivan v. Schuyler*, No. 57794-1-II, 2024 WL 3274499, at *4 (July 2, 2024) (cited under GR 14.1).
> [Larry] may appeal the timeliness issue addressed by the superior court. *See generally* RCW 2.24.050; *Maldonado v. Maldonado*, 197 W[n]. App. 779, 789, 391 P.3d 546 (2017). But the appeal does not include the June 20, 2024 order.

Ruling by Commissioner Bearse, *Wall v. Wall*, No. 60103-6-II (Wash. Ct. App. Oct. 8, 2024). Accordingly, we cannot review the issues of personal jurisdiction and service that were addressed in the motion to vacate because he did not file a timely notice of appeal of the June 20 order denying his motion to vacate. However, as the commissioner ruled, Larry may appeal the timeliness issue raised in the motion to reconsider the order denying his motion for revision as untimely.[3]

---

[3] We note that Larry's appeal of the July 19 order denying his motion for revision was also not timely filed as Larry's notice of appeal was filed August 23 which was outside the 30 days provided by RAP 5.2(a). RAP 5.2(a) (generally requiring a notice of appeal to be filed within "30 days after the entry of the decision of the trial court that the party filing the notice wants reviewed"). Larry provides no argument on appealability.

II.     UNTIMELY MOTION

Larry argues the trial court erred in denying his motion for reconsideration on the grounds that his motion for revision was untimely filed.  We disagree.

A.     Legal Principles

We review a trial court's decisions on motions for reconsideration for abuse of discretion. *Kenco Enters. Nw., LLC v. Wiese*, 172 Wn. App. 607, 614, 291 P.3d 261 (2013).

RCW 2.24.050 provides that a party may seek revision of a commissioner's decision in the superior court by filing a motion within 10 days of the entry of the commissioner's order.  A superior court has no statutory or inherent authority to entertain an untimely revision motion.  *See In re Marriage of Robertson*, 113 Wn. App. 711, 715-16, 54 P.3d 708 (2002).

To calculate the appropriate time frame during which a motion may be filed, CR 6(a) provides that:

> [T]he day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, a Sunday nor a legal holiday.

An electronic document is considered filed "when it is received by the clerk's designated computer during the clerk's business hours."  GR (30)(c)(1).  "[O]therwise, the document is considered filed at the beginning of the next business day."  *Id*.

B.     Analysis

Here, the order denying the motion for revision was entered June 20, 2024.  Accordingly, the ten-day period during which Larry needed to file his motion for revision began to run on June 21, the day after the commissioner entered the order denying the motion for revision.  Counting forward ten days, the tenth day would have been Sunday, June 30.  However, since Sunday could

not be the final day pursuant to CR 6(a), Monday, July 1, would have been the final day Larry could file his motion. To be considered "filed," however, Larry's motion had to be received by the clerk's office during the clerk's business hours.

Larry e-mailed his motion to the clerk's office on July 1 at 4:32 p.m. While neither party presents evidence regarding the business hours of the Kitsap County clerk's office, Larry does not appear to dispute that the office closed at 4:30 p.m. Because Larry's e-mail was received two minutes after the Kitsap County clerk's office closed,[4] the motion would have been considered filed the next business day, July 2. As such, it was filed after the ten days required under RCW 2.24.050.

Therefore, the trial court did not err in denying Larry's motion for reconsideration because his motion for revision was untimely filed.

III.    PERSONAL JURISDICTION

As explained above, Larry did not timely appeal the trial court's denial of his motion to vacate that addressed his arguments that the court did not have personal jurisdiction, in part, due to insufficient service. However, even if we were to consider these claims on appeal, Larry's arguments would still fail because he waived any claim of lack of personal jurisdiction or insufficient service.

---

[4] We may take judicial notice of "adjudicative facts." ER 201(a). "Such a fact 'must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *State v. Disney*, 199 Wn. App. 422, 431, 398 P.3d 1218 (2017) (quoting ER 201(b)). Here, we take judicial notice of the fact that the Kitsap County clerk's office closes weekdays at 4:30 p.m. according to the county's official website. *See* https://www.kitsap.gov/clerk/Pages/default.aspx.

A.     Legal Principles

If underlying facts are undisputed, personal jurisdiction is a question of law we review de novo. *Hartley v. Am. Cont. Bridge League*, 61 Wn. App. 600, 603, 812 P.2d 109 (1991).

The term "personal jurisdiction" denotes "the court's power over a person." *Taylor v. Ebenger*, 34 Wn. App. 2d 497, 506, 569 P.3d 340 (2025). Exercising personal jurisdiction "over a nonresident defendant requires compliance with both the relevant state long-arm statute and the Fourteenth Amendment's due process clause." *Downing v. Losvar*, 21 Wn. App. 2d 635, 653, 507 P.3d 894 (2022).

However, a party waives a claim of lack of personal jurisdiction if it is not "pleaded in the answer or in a pretrial motion to dismiss." *Sutton v. Hirvonen*, 113 Wn.2d 1, 5, 775 P.2d 448 (1989); CR 12(b), (h)(1). A party also waives a defense of lack of personal jurisdiction if "before the court rules, [they] ask[] the court to grant affirmative relief, or otherwise consent[], expressly or impliedly, to the court's exercising jurisdiction." *In re Marriage of Steele*, 90 Wn. App. 992, 997-98, 957 P.2d 247 (1998).[5]

"Proper service of the summons and complaint is a prerequisite to a court obtaining jurisdiction over a party." *Harvey v. Obermeit*, 163 Wn. App. 311, 318, 261 P.3d 671 (2011). However, a party waives the defense of insufficient service if they do not assert it in a "responsive pleading or motion under CR 12(b)(5)." *Id.* at 323. A defendant also waives the defense if "(1) assertion of the defense is inconsistent with [the] defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense." *King v. Snohomish County*, 146 Wn.2d 420, 424, 47 P.3d 563 (2002).

---

[5] "A party does not waive a claim of lack of personal jurisdiction by not appearing, by failing to obtain a jurisdictional ruling before trial, or by complying with parts of a decree that the court had jurisdiction to enter." *Steele*, 90 Wn. App. at 998 (footnotes omitted).

B.     Analysis

Here, Larry waived any challenge to personal jurisdiction. Larry appeared at the hearing on the petition and stated that although "[i]t was difficult to prepare . . . with such short notice, . . . I think we should move forward." RP at 4. He presented substantive argument on the merits and asked the trial court to deny the petition, thereby consenting to the court's jurisdiction. Accordingly, Larry's claim of lack of personal jurisdiction is waived.

For similar reasons, even if service was improper, Larry waived the affirmative defense of insufficient service. Larry appeared at the hearing on the petition and stated he was ready to go forward. He then participated in the hearing, presenting his argument for why the petition should not be granted. After the court granted the petition and entered its ruling, Larry then filed a motion arguing he was not properly served. At that point, however, Larry had waived the defense of insufficient service because not only was he dilatory in asserting the defense, but his claim was inconsistent with his prior behavior—namely, showing up, stating he wanted to proceed, and participating in the hearing on the merits.

Therefore, even if we were to consider Larry's arguments, we conclude he waived the defenses of both insufficient service and lack of personal jurisdiction.

CONCLUSION

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, J.

Cruser, C.J.